before just her to tell the board of the state of Illinois is now convened you may be seated. Good morning. Alright, the first case this morning is case number 4-24-1536, People's State of Illinois. Versus Zachary J. Hocker. Counsel for the appellant will identify yourself for the record please. Thank you your honor. Good morning. If you would just identify yourself. My name is Daniel Mallon. Alright, and counsel for the appellate. David Hanson. Alright. Can you tell the prosecutor's office. Alright, counsel you may proceed. Thank you very much. Again, may it please the court. Counsel. My name is Daniel Mallon. I'm with the office of the state appellate defender's office. And I represent the appellant, Mr. Zachary Hocker. Your honors, we're asking this court to reverse my client's convictions because he did not use force or threaten the use of force in order to make sexual contact with the complainant. As the statute specifically requires. Your honors, the client, the complainant knew my client. They were friends. She was subletting the apartment from him and his wife. On the morning of the incident, she woke up to him touching her in bed. She told him to stop, pushed his hand away, got out of bed, and walked into the living room where she got dressed. He followed her into the living room and he tried to make sexual contact with her. He made sexual contact with her again after he got dressed. He attempted to obtain her consent by saying, come on, this is what he wanted. The complainant had previously indicated to my client that she had previously wanted him to touch her sexually. But of course, during this incident, she did not give consent for him to touch her. In response to each of his advances, she would tell him to stop and she would push his hand away without resistance. That was according to her testimony. When specifically asked, she testified that he did not use force. She was specifically asked if he said anything other than, come on, this is what you wanted. And she said he did not tell her he was going to use any force. So again, we can't dispute that he made sexual contact with her. But under the statute, more is required than sexual contact itself to establish the force element of criminal sexual abuse. How do we know nothing more happened? It's because she said so. She was asked by defense counsel whether or not he used force to make sexual contact with her, and she said no. She was asked if he said he was going to use force, and she said no. Even more, she didn't feel compelled to submit to his advances. Under Illinois law, force within the meaning of the criminal sexual abuse statute does not mean the force inherent in the sexual act. More is required. What is necessary is for the victim to feel compelled to submit to the defendant's advances. She needs to feel physical compulsion to submit to the contact. We know she didn't in this case because she said so. She testified that every single time he would touch her, she would just push his hand away without resistance. So where does that leave an unpermitted touching in terms of force? I'm sorry? Where does that leave the idea of an unpermitted touching with respect to force? Unpermitted touching? Correct. Well, I think that would be a battery. Battery is a lesser-included offense of criminal sex. What if that touching was to a sex organ? Without the use of force, it would still be with a battery. Sexual contact, unwanted, unconsensual sexual contact is inherently offensive, provoking within the battery statute. So what differs for criminal sexual abuse is sexual contact plus the additional element of force, and that's what was missing in this case. So, again, she did not submit to his advances. She testified he didn't hold her down. She testified when she would brush his hand aside, he wouldn't resist. He would barely interact with her hand. He was attempting to obtain consent to touch her. So under these facts, as described by her, she was perfectly credible. This amounted to nothing more than a battery. The state seemed to overcharge her with criminal sexual abuse, and the state seemed to realize at trial that it was missing the force element when they essentially advanced the theory that any force used to enter the apartment could substitute for the force required for the criminal sexual abuse. Well, counsel, didn't she testify that she didn't leave the apartment because she'd seen the force that was used to enter the apartment plus the wood that was used to be put up against the door? And so aren't those circumstances that the trial court should have considered in whether or not in her mind was aware that there was at least a threat of force? Even though there may not have been a verbal threat made, there's that threat by the circumstances. Well, the circumstances, yes. When she walked into the living room, she saw a piece of what the defense would describe as a flimsy piece of trim that had broken off the door frame. But that was presented as evidence of the unlawful restraint. She was also charged with it. He was also charged with the unlawful restraint. And the same thing with the she was asked towards the end of her testimony about why didn't she leave the apartment. She said she was scared and he was going to become violent. Correct. Those are circumstances and those were pieces of evidence presented to establish unlawful restraint, whether or not she was free to leave. And that's a different question as to whether or not she was compelled to submit to her advances. So there is evidence of sexual touching after going to the living room. Yes, Your Honor. Yes. She walked into the living room. She got dressed. She saw the door. And she testified that if she wanted to, she could have left. And that's probably why the jury rejected or jury acquitted her of unlawful restraint. She was not detained. The same can be said for her testimony that she was scared to leave because he was going to become violent. She essentially testified that she could have left if she wanted to, and he didn't become violent. But the bigger picture is, the bigger question is, did he threaten violence in order to get her to submit to his advances to make sexual contact? And the answer to that is no by her own testimony. So, sorry, are you proposing that the threat has to be verbal? No, the threat doesn't have to be verbal. I think the threat could be nonverbal. But even here, she said she didn't give any testimony that made it either verbal or nonverbal threats to him. And I think it's important to note, I think we can note, when she did testify about why she didn't leave the apartment, the state asked her, the state tried to elicit testimony about whether or not she knew he had a violent history. There was an objection by defense counsel. There was a sidebar. And even the state clarified that the reason I asked those questions about whether or not he was going to get violent or have a history wasn't because she said there was no force or threat of force during the sexual abuse. It was because of the conversations or questions about the wood and how much the wood weighed. Why didn't you just leave if the wood was there? So that's why I asked those questions. So the state was clarifying that the reason it was eliciting testimony about the wood and eliciting any testimony about any possible fear she had about being violent, that was all about whether or not she could leave, which was an element of the unlawful restraint. Again, what we do know is any time that he made sexual contact with her, he did not use any force as required by the statute. And all he said was try to obtain her consent. He didn't otherwise make any sort of verbal or nonverbal threats of force or violence. Counsel, you make a good and interesting legal argument with regard to the lack of force exhibited, but it seems to me at this point that you're skirting some of the circumstantial evidence with regards to the door. Presumably it was locked, the wood blocking the door, the victim feeling fear in the moment. So the circumstantial evidence is a concern for me. You seem to not give it the weight that perhaps Trier affected. Well, the circumstantial evidence, I'm not trying to skirt around it at all. There's no dispute that he broke into the apartment, which means he used force to enter into the apartment. But the force was used to enter the apartment. And you can just look at the plain language of the statute and case law interpreting the statute that the force has to be used to compel her to submit to the sexual contact. And for sure, in a vacuum, looking at the law, you make an excellent argument. But when you apply the circumstances, I'm concerned about the subjective fear that the victim states there was, and I'm not sure that you've addressed that for us. I think additional circumstances that we can look at, that this court can look at, is that she knew my client. They did have a history. They were friends. She was friends with both my client and his wife. And she did testify that on a previous occasion that she had asked him to touch her. And then the circumstances as she described him, so she was woken up to him touching her. She brushed his hand aside, told him to stop. He did, but he repeatedly touched her again, and he repeatedly told her to stop, and he did. She walked into the living room. She got dressed. She said she could have left if she wanted to, but she didn't. She chose not to. She walked to the couch, sat down on the couch. She said she had her legs up. She got onto her laptop. She messaged her coworkers. And that's when my client's wife soon arrived about five minutes after. So what do you make of that message? How would you deal with that? I think the message was she didn't want to escalate the situation. I think she wanted to de-escalate the situation. She wanted to remain calm because, again, she indicated she was scared if he was going to become violent, if she tried to leave. That was speculation. I mean, that was based not on anything he said or anything he did other than initially entering the apartment. And the message is she would rather her mate stay there, and he didn't become violent after that, and she would rather stay there and wait for the police to come. My client's wife arrived before the police came, and then he was eventually arrested. Counsel, a couple times in your brief you have the argument that criminal sexual abuse requires a force be used or threatened against the victim during the course of the sexual conduct. But I don't see a citation to any case law on that. Do you have cases that support that? The case law is not limited. I'm looking at Case Haywood. It's in Illinois Supreme Court. Force within the meaning of criminal sexual abuse does not mean the force inherent in the sexual action, so force on top of the sexual contact. Janda, the case we cite from this court, the force does not mean the force inherent in the sexual contact, but physical compulsion. I think that's very useful language, that physical compulsion or the threat of physical compulsion that causes the victim to submit. And then I think we can just look to the statute. A person commits sexual abuse, criminal sexual abuse, if that person commits an act of sexual conduct by the use of force or threat of force. So I think the statute itself states that sexual contact has to be committed by the use of force. Even the jury instruction, which it seems that the jurors ignored, that a person is guilty of sexual criminal abuse if he committed an act of sexual conduct and that act was committed by force or the threat of force. So I think in all these, between the language of the instruction, the statute, and the case law, it says that the force has to be used to commit the act itself. What about the defendant's size compared to that of the victim? Can that be used as force? I think it's, I'm sorry, I think it's, oh, I'm sorry, as force, as evidence of force. I think in these circumstances it's irrelevant because she knew him and because of the history they had together. This wasn't a case of stranger danger where a strange person walks into your apartment. And perhaps in that scenario, a much bigger defendant would, you'd feel inherently compelled to submit just because you know he's going to be overwhelmed by size. But the way, because she knew him, and I think the way she described how she acted after she was awoken by him, that makes really the size disparity irrelevant. So just to summarize, she said herself he didn't use or threaten force or violence to compel her to submit to the sexual contact. And again, she also did not submit to the contact. She pushed his hand away and told him to stop, which he did. Her testimony and description of the incident was clear. It was credible. It was reasonable. And even in light of the circumstances, including that she was friends with the client, my client and his wife, they had a history together, even though she did see the wood, I think because of her statements that he did not use force or threaten force during the contact, his convictions must be remersed. Thank you very much. All right. You will have time to read one. Thank you very much. Counsel for the appellee. Good morning, Your Honor. I appeal to the court, counsel. The defendant here is making the exact same argument he made to the jury, that there was no use of force, and he is asking this court to act as a second prior fact, and that is simply not the standard of review that is to be applied. As Justice Kavanaugh noted, there is a lot of circumstantial evidence here that does show that there is force, despite the victim's claim that there was no force, and the jury was not required to believe her statement that there was no force. The defendants made, I think it was about six phone calls to his wife, and four of them were discussing having the wife go to visit the victim and tell her, hey, don't show up, change your testimony, withdraw the charges. In fact, the wife told the defendant that she was in fact going to go see the victim and talk to her. The jury could take that into account as a possibility that she was downplaying the amount of force and threat of force because of her relationship with the defendant and because she had been contacted by the defendant's wife to walk things back to not show up. You also have the fact that the defendant testified, he went there, knocked on the door, nobody answered, and he left. Nothing ever happened. The jury can take that into account as determining whether, in fact, force used. There was evidence of a second offense against another victim, and they're virtually the same type of circumstances. He approaches the victim while they're asleep, wakes them up, and using minimal force to try to escalate into further sexual contact. You have the, I think, the force of the entry and the use of the board to block up the door is itself force or threat of force that would show aggravated sexual assault in the living room, even if it didn't apply to the being woken up in bed having a 200-pound man in bed with her. The defendant says that the size disparity is irrelevant because of the friendship, but she testified that she was afraid of him, despite of the size disparity, and the relationship would also not eliminate the size disparity between the defendant and the victim, which the jury could observe. The statute defines force as including detention of the victim, and we do have the detention here with the board propped against the door, the defendant holding the door, a piece of wood, was testified, if I recall correctly, as being two feet long and weighing a couple pounds. So brandishing a piece of wood is a threat of force, even if he doesn't say anything. So it said that this was a question for the jury, and the defendant, making the exact same argument he made before the jury, is asking this court to substitute his judgment for that of the jury on the question of force. The jury was not required to believe the victim's testimony that there was no force used, and could in fact find that there was force used by virtue of the breaking in entry, the disparity in size, the use of the wood in the living room. Also look at the defendant's admissions on the phone, his efforts to have the victim change the story, and what the police opposed from him. He fled and was captured only when he went down a long street and ended up against a bush he couldn't climb over. All that goes into it as well as far as showing that this was not, that the force was used to try to end the commission of the sexual assault. Counsel, that last part that you mentioned, you know, he ran into a bush or whatever, the victim at the time of the incident wouldn't have known anything about those types of things. How does that, how do we figure that into the force? Consciousness of guilt on the part of the defendant as that he was in fact using force when he was approaching her in this manner. Even though she knew him, waking up to him in her bed holding her down and following her and repeatedly touching her when she says no one pushes his hand away, even though he tries to do it in a, I don't know how to say gentle manner of force, but there was a threat of force there between the disparity in size, the forcible entry, the use of the stick. Defendants claim that nothing, absolutely nothing happened, I think weighs into the jury's determination as to whether this offense occurred and how it occurred. Was there evidence that she was held down in the bed? I don't recall. I cannot recall. I know that he had one hand on her at one point while he was touching with the other, but I don't know how much actual pressure was used in holding her down because she was able to brush his arm away with not too much trouble. But I submit that this was a question for the jury and they have the same evidence here that this court has and they said, yeah, that all the elements were proved and the jury's verdict is entitled to be given great weight. This court should not re-weigh the evidence or substitute a judge's evaluation. If there are no further questions. Seeing none, thank you. Mr. Mellon, you may address this in your final argument. Thank you very much. No, there was no evidence that he held her down in the bed. I think counsel might have been confusing some of the testimony that came out with the other crime's evidence. He refers to that as there was perhaps a minimal force in that case. Any minimal force used and presented in that case cannot be used to substitute the force here. The jury was not required to believe that there is no force. She testified that there was no force. No one else testified that there was any other force used. I think counsel indicated that my client was not credible because he testified that he knocked on the door and left. No, that's not what happened to my client. Multiple witnesses testified that he entered the apartment. So my client didn't try and say he didn't commit sexual contact. Where did that come from in the record? I'm sorry? Where did that inference come from in the record? Counsel's inference, I'm sorry. You don't recall that anywhere else in the record? My client was not specifically asked either by the state or the defense about what occurred once he entered the apartment. But my client did admit that he stated that he thought no one was home. He left his keys at his wife's house, and then he knocked on the door for 30 minutes, and then he broke down the door. Thank you. Again, yeah, she testified that there was no force, certainly not in the bed. So unless this court has any further questions, we submit this case for your consideration. All right, thank you. All right, we'll take this matter under advisement and render a decision due course. The court will be in recess.